**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| M. NORMAN DONNENFELD, on behalf of himself and all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>PETRO HOME SERVICES, PETRO HOLDINGS, INC. and PETRO, INC.,<br><br>*Defendants.* | Civil Action No. 16-882<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court by way of a motion to dismiss, to strike the class action allegations, and to stay discovery filed by Defendants Petro Home Services ("PHS"), Petro Holdings, Inc. and Petro, Inc. (collectively "Defendants" or "Petro"). D.E. 18. Plaintiff M. Norman Donnenfeld filed a brief in opposition to which Defendants replied. D.E. 19, 21. The Court reviewed the submissions in support and in opposition, and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendants' motion is **GRANTED** in part and **DENIED** in part as moot.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

Since 2013, Donnenfeld entered into contracts with Defendants[1] for heating oil for his home. Petro offers three different home oil delivery plans. Compl. ¶¶ 4, 20, D.E. 1. The three are the variable plan, the fixed plan, and the ceiling plan. *Id.* ¶ 4. From August 7, 2013 through

---

[1] Donnenfeld refers to the three Defendant entities collectively as Petro and alleges that together they service the entire Northeast. *Id.* ¶ 14.

December 4, 2014, Donnenfeld "entered in[to] a fixed plan home heating oil contract with Petro." *Id.* ¶¶ 20-22. Under the fixed plan, "[t]he oil price remains the same for every delivery, for every gallon throughout the year, regardless of market conditions." *Id.* ¶ 4.

In December 2014, "Donnenfeld determined that the fixed plan no longer made economic sense" because the price of heating oil had dropped. *Id.* ¶ 22. As a result, Donnenfeld called Mike Perna, the President and General Manager of the Plainview, New York office of PHS, to switch plans. Donnenfeld paid a $300 early termination fee to cancel his fixed price plan and switched to a ceiling price plan. *Id.* Under the ceiling price plan "the price [of oil] will trend up or down based on market conditions at the time each delivery is made but will never exceed a set limit." *Id.* ¶ 4. As a result, the customer will never pay more than the agreed upon maximum price per gallon and can pay less. The terms of Donnenfeld's ceiling price contract were memorialized in a letter from Perna, which provided that the price per gallon upon delivery would vary based on the market but would not exceed $2.899. *Id.* ¶ 22. While a party to the ceiling price contract, Donnenfeld, a New York state resident, received his oil from a depot in Plainview, New York but mailed payments to a post office box in Newark, New Jersey. *Id.* ¶¶ 10-11, 24. Although Donnenfeld did not receive his oil from a New Jersey location, he alleges that Petro has five depots located throughout New Jersey. *Id.* ¶ 14.

Donnenfeld contends that "oil prices continued to fall dramatically," however, "shortly after entering into the ceiling plan . . . , Petro delivered oil to Donnenfeld at $2.899" for each delivery. *Id.* ¶ 23. Donnenfeld continues that despite representations that oil prices under the ceiling plan fluctuate based on market conditions, Defendants "unilaterally and without justification . . . charge Petro ceiling plan customers the top of the ceiling price per gallon on a

regular basis." *Id.* ¶ 6. As a result, ceiling plan customers do not receive the promised benefits of having their oil price reduced in connection with falling market prices. *Id.* ¶ 7.

Donnenfeld filed his Complaint on February 18, 2016 on behalf of himself and a proposed class of ceiling plan customers who did not receive the benefit of downward price fluctuations. *Id.* ¶ 28. Donnenfeld brought suit against (1) PHS, the "local brand name of Petro Holdings, Inc.," which has offices in Plainview, New York and a mailing address in Newark, New Jersey; (2) Petro Holdings, Inc., a Minnesota corporation with its principle place of business in Connecticut; and (3) Petro, Inc., a Delaware corporation with its principal place of business in Connecticut. *Id.* ¶¶ 11-13. Donnenfeld's Complaint asserts claims for (1) violations of New York General Business Law Sections 394 and 350; (2) common law false advertising; (3) fraudulent concealment; (4) breach of contract; (5) breach of the implied covenant of good faith and fair dealing; (6) unjust enrichment; and (7) multiple state consumer protection laws. *See generally id.*

Defendants subsequently filed the current motion. D.E. 18. Defendants seek dismissal on multiple grounds, arguing that this Court lacks personal jurisdiction over the Defendants, the Complaint fails to state a claim, and that Plaintiff lacks standing to assert state consumer protection laws outside of New York. Defs' Br. at 5-22. Defendants also contend that Donnenfeld's class action allegations should be struck because the Rule 23 requirements cannot be satisfied. *Id.* at 22-28. Finally, Defendants posit that discovery should be stayed while this motion remains pending. *Id.* at 29. Donnenfeld counters that this Court has both general and specific personal jurisdiction over Defendants. In the alternative, Donnenfeld argues that the Court should transfer this matter to New York if it determines that personal jurisdiction is lacking. Plf's Br. at 5-10. Plaintiff also counters that he properly asserts claims for each count of his Complaint, and that

striking the class action allegations is inappropriate at this juncture because the Court should not consider the merits of class certification at this stage. *Id.* at 11-39.

The Court concludes that this matter should be dismissed without prejudice based on the personal jurisdiction question and the failure to plausibly plead a claim. As a result, the Court does not reach Defendant's remaining arguments and denies them as moot in light of the dismissal.

## II.   LEGAL STANDARD

Defendants argue that the Complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(2), which permits a party to move to dismiss a case for lack of personal jurisdiction. "Where. . . the Court resolves the jurisdictional issue in the absence of a jurisdictional hearing and without the benefit of discovery, the plaintiff need only establish a prima facie case of personal jurisdiction." *Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 461 (D.N.J. 2015) (citing *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328-29 (Fed. Cir. 2003)). Moreover, the Court must accept a plaintiff's allegations as true and resolve any factual conflicts in the plaintiff's favor. *Id.* "Nevertheless, the plaintiff bears the burden of showing the basis for jurisdiction and must establish with reasonable particularity sufficient contacts between the defendant and the forum state." *Id.* (internal quotations marks and citations omitted).

Defendants also seek dismissal under Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const.*

*Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

### III.  DISCUSSION

#### A. PERSONAL JURISDICTION

"[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state," so long as the jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (internal quotation marks omitted). This inquiry involves a two-step process; a court first looks to the state requirements and then to the federal constitutional requirements. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). New Jersey's long-arm jurisdiction law provides that courts may "exercise jurisdiction over a non-resident defendant to the uttermost limits permitted by the United States Constitution." *Nicastro v. McIntyre Mach. Am., Ltd.*, 201 N.J. 48, 72 (2010) (internal quotation marks omitted), *rev'd on other grounds sub nom.*, *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). Accordingly, in New Jersey, the two steps are collapsed into one and "we ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation marks omitted).

Personal jurisdiction may be established by means of general jurisdiction or specific jurisdiction over a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). If general jurisdiction exists, a court may hear any and all claims against the defendant. *Id.* If, however, a defendant is solely subject to specific jurisdiction, it may only face suit in the forum if its activities concerning the forum are related to the claims in the suit. *Id.*

**1. General Jurisdiction**

For an entity, its "place of incorporation and principal place of business are paradigm bases for general jurisdiction[.]" *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (internal quotation marks omitted). General jurisdiction may also be asserted against out-of-state corporations, in "exceptional case[s]," where "a corporation's operations in a forum state . . . may be so substantial and of such nature as to render the corporation at home in that State." *Id.* at 761 n.19.

None of the Defendants in this matter are incorporated in or have a principal place of business in New Jersey. Compl. ¶¶ 11-13. Consequently, the "paradigm bases for general jurisdiction" are not present here. *Daimler*, 143 S. Ct. at 760. Plaintiff, therefore, must establish that this is one of the exceptional cases where a corporation's operations in New Jersey are so substantial as to confer general jurisdiction. *Id.* at 761 n.19. Donnenfeld alleges that the post office box in Newark and five depots throughout the state demonstrates "substantial business in New Jersey, and systematic and continuous contacts" in the state. Compl. ¶ 16. These, however, are an insufficient basis for the Court to assert general jurisdiction over any of the Defendants. *See, e.g., Oliver v. Funai Corp., Inc.*, No. 14-4532, 2015 WL 9304541, at *8 (D.N.J. Dec. 21, 2015) (concluding that the presence of a employees of a large corporation in New Jersey and funneling of products through New Jersey was not enough to convey general jurisdiction); *McCourt v. A.O. Smith Water Prods. Co.*, No. 14-221, 2015 WL 4997403, at *3 (D.N.J. Aug. 20,

2015) (finding no general jurisdiction over corporation that leased two office spaces in New Jersey and had a small percentage of New Jersey employees); *Finn v. Great Plains Lending, LLC*, No. 15-4658, 2016 WL 705242, at *3 (E.D. Pa. Feb. 23, 2016) (concluding that presence of P.O. Box address in the state was not a sufficient basis to assert general jurisdiction). Defendant also makes an allegation that Petro has "systematic and continuous contacts with New Jersey[.]" Compl. ¶ 16. However, this allegation is merely a legal conclusion and entitled to no weight.

Plaintiff also argues that this Court has general jurisdiction over Defendants through the theory of consent through registration. Plf's Br. at 7-8. Consent through registration may be a valid basis for asserting personal jurisdiction. *Otsuka Pharm. Co.*, 106 F. Supp. 3d at 469 (concluding that "designation of an in-state agent for service of process in accordance with a state registration statute may constitute consent to personal jurisdiction"); *see also Bors v. Johnson & Johnson*, --- F. Supp. 3d ---, 2016 WL 5172816, at *5 (E.D. Pa. Sept. 20, 2016) (concluding that consent by jurisdiction was valid under Pennsylvania's registration statute). *But see McCourt*, 2015 WL 4997403, at *4 (concluding that registration to do business and designation of registered agent was not sufficient to convey general jurisdiction where corporation did not actually engage in business in New Jersey). Donnenfeld, however, does not allege that any of the Defendants are registered to do business in New Jersey or have a registered agent for service within the state. Plaintiff only alleges that PHS "is associated" with non-party Petro Plumbing, which has a registered agent in New Jersey. Plf's Br. at 8. Importantly, Plaintiff make this factual allegation in his brief not in his Complaint or through producing an authentic document relied upon in the Complaint. *See Schmidt v. Soklas*, 770 F.3d 241, 249 (3d Cir. 2014). In any event, this undefined "association" is an insufficient basis for the Court to assert personal jurisdiction over PHS even

were the Court to follow the registered agent argument. Consequently, the Court does not have general jurisdiction over any of the Defendants.

### 2. Specific Jurisdiction

Specific jurisdiction requires that the defendant "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citations and quotation marks omitted). This analysis depends upon "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). As such, a court must consider three factors when deciding whether specific jurisdiction exists as to a particular defendant. *O'Connor*, 496 F.3d at 317. First, the defendant must have "purposefully directed [its] activities at the forum." *Id.* (internal quotation marks omitted). Second, the litigation must "arise out of or relate to at least one of those activities." *Id.* (internal quotation marks omitted). Third, if the first two requirements are met, the exercise of jurisdiction must "otherwise comport with fair play and substantial justice." *Id.* (internal quotation marks omitted). In addition, jurisdiction should be separately analyzed for each defendant. *Al-Ghena Int'l Corp. v. Radwan*, 957 F. Supp. 2d 511, 531 (D.N.J. 2013) (quoting *Lexington Ins. Co. v. Forrest*, 354 F. Supp. 2d 549, 551 (E.D. Pa. 2005)).

Donnenfeld refers to the three Defendant entities collectively as Petro. The only apparent link to New Jersey that is related to this litigation is the mailing address in Newark. Compl. ¶ 16. Donnenfeld claims that PHS has a billing address in New Jersey and that PHS is the local brand name of Petro Holdings, Inc. *Id.* ¶ 11. Defendants argue that PHS should be dismissed as a party to this suit because it is not a separate legal entity that can be subjected to suit. Defs' Br. at 6 n.3 (quoting *Estate of Litwin v. Emeritus Corp.*, No. 14-5847, 2015 WL 3603953, at *3 (D.N.J. June

5, 2015)). Plaintiff does not present any legal authority to the contrary and does not contest Defendants' position. However, Donnenfeld's Complaint is not clear as to which of the two remaining Defendants, Petro Holdings, Inc. or Petro, Inc., is tied to the post office box in New Jersey (assuming that one of them is). Moreover, the relationship between Petro Holdings, Inc. and Petro, Inc. is not clear regarding the allegations in the Complaint. Depending upon the nature of the underlying claim, the New Jersey address could be a significant factor for specific personal jurisdiction purposes, but it is not clear from the Complaint which Defendant, if any, the Court could exercise jurisdiction over on the basis of this fact. As a result, the Court cannot not determine whether it has specific jurisdiction over any of the Defendants. Moreover, the Complaint's factual allegations do not indicate with "reasonable particularity" the possible existence of minimal contacts. As a result, jurisdictional discovery is not appropriate at this time. *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) (stating that jurisdiction discovery is appropriate only "[i]f the plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite contacts" (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 (3d Cir. 2003))).

In sum, Plaintiff fails to establish that he has general or specific personal jurisdiction over any of the Defendants. As a result, the Complaint will be dismissed, without prejudice, pursuant to Rule 12(b)(2) for lack of jurisdiction.[2]

---

[2] Donnenfeld argues that if personal jurisdiction is lacking, the Court should transfer this case to the United States District Court for the Southern or Eastern District of New York pursuant to 28 U.S.C. §§ 1404(a) or 1406(a). Plf's Br. at 10-11. The Court will not transfer this matter at this time. Donnenfeld does not establish that this case was filed in the wrong venue under 28 U.S.C. § 1391 such that transfer under Section 1406(a) would be appropriate. *See Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 577 (2013). Moreover, Donnenfeld fails to address any of the personal or public interest factors that a court must consider when deciding whether to transfer a case under Section 1404(a). *See MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 392 (D.N.J. 2016).

9

### B. FAILURE TO STATE A CLAIM

Even if the Court found that there was personal jurisdiction over any of the Defendants, it would dismiss the Complaint pursuant to Rule 12(b)(6). Without delving into the specific requirements for each count of the Complaint, the Court will address the overarching deficiencies with Plaintiff's pleading. Donnenfeld's claims rests on the allegation that despite representations that his oil prices would fluctuate based on market conditions, Defendants "unilaterally and without justification . . . charge Petro ceiling plan customers the top of the ceiling price per gallon on a regular basis." Compl. ¶ 6. Donnenfeld fails to plausibly plead facts by which the Court can reasonably infer that Defendants are liable for the alleged misconduct or, even more basically, that oil prices fell. *See Connelly*, 809 F.3d at 786-87 (stating that a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims").

Donnenfeld states, in a conclusory manner, that "oil prices continued to fall dramatically." Compl. ¶ 23. The Complaint, however, utterly fails to provide any factual support for this critical allegation which is the underpinning of the entire case. This is so despite Plaintiff's claim in his brief that "'[d]ownward price fluctuations' will be set by objective criteria *which can be easily determined* by looking up the market price of home heating oil on any given date[.]" Plf's Br. at 39 (emphasis added). The Complaint provides no information as to how much prices fell, over what period they fell, or the timing between the change in the price of home heating oil and when consumers can reasonably be expected to benefit from a price decrease. For example, the Court has no indication from the Complaint whether Plaintiff is contending that if market prices fall, a consumer can expect to recognize a financial savings the next day, the next week, the next month, or sometime later.

Donnenfeld's remaining factual allegations do not cure the Complaint's plausibility deficiency. First, Donnenfeld alleges a December 2015 "anonymous phone call to Petro's Plainview, New York location," revealed that Petro was charging a ceiling price of $2.35 even though he was charged $2.899 for each delivery. *Id.* ¶ 24. This "anonymous phone call," which is only anonymous to Defendants and this Court, is not sufficient to establish that home heating oil prices were falling. Presumably, the anonymous caller is not anonymous to Plaintiff and Plaintiff would be in a position to properly allege the specifics of the call. In addition, Donnenfeld rests his allegations on the fact that his daughter, who also lives on Long Island, receives home heating oil from an affiliate of Petro and saw her prices fall. *Id.* ¶ 25. The Complaint, however, does not indicate who the affiliate is, how that company is actually affiliated with any of the Defendants, the terms of her contract, or any other details that the Court can reasonably use to determine that the affiliate's actions should be considered against Defendants. Finally, Donnenfeld relies heavily on "Internet research," which consists of nothing more than unsubstantiated complaints from customers in the tristate area. *Id.* ¶ 26. The Complaint sets forth, over the course of approximately seven pages, excerpts of alleged consumer internet complaints about "Petro." Donnenfeld claims that other courts have permitted such evidence to show that a party was on notice of the complaints. But that is not the purpose for which Donnenfeld cites to them in the Complaint. Instead, Plaintiff cites to the internet postings as substantive evidence of Defendants' wrongdoing. The Court will not allow Plaintiff to use these unconfirmed, cut-and-pasted, on-line complaints to support a plausibility finding. *Cf.*, *SPX Corp. v. Doe*, 253 F. Supp. 2d 974, 981 (N.D. Ohio 2003) (concluding that a reasonable reader would not consider statements on an Internet message board as facts); *MMG Ins. Co. v. Samsung Elects. Am., Inc.*, 293 F.R.D. 58, 66 (D.N.H. 2013) (questioning whether anonymous on-line complaints about another product

could establish that a different product from same the manufacturer started a fire). The Court does not even know if the persons who posted are actually real. The Court also does not know whether the persons who posted were doing so for other than their stated reason, *i.e.* to make a legitimate complaint against Petro. For example, the Court does not know whether the persons who posted did so at the request of a competitor of Petro. It appears to the Court that the on-line postings provided Plaintiff with an opportunity to start a focused investigation. If Plaintiff can track down the persons posting, and if they are real, then Plaintiff has a good starting point to determine whether others were treated by Defendants in the same manner and under similar circumstances as Plaintiff claims he was treated. But this is just a starting point rather than supporting a finding that the Complaint is plausibly pled.

### C. MOTION TO STRIKE THE CLASS ACTION ALLEGATIONS

Defendants argue that the class action allegations should be struck from the Complaint because the proposed classes are "incurably deficient." Defs' Br. at 24. Donnenfeld argues that striking the class allegations is premature. Plf's Br. at 33. "[A] court may strike class action allegations 'in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.'" *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 283-84 (D.N.J. 2011) (quoting *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 n.3 (D.N.J. 2003)). In most cases, however, a court should conduct a "rigorous analysis" when determining whether to certify a class and may need to "delve beyond the pleadings to determine whether the requirements . . . are satisfied." *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 (3d Cir. 2011) (internal citations omitted). The Court notes that this analysis typically requires discovery. *Id.* As a result, many courts in this district have determined that it is inappropriate to consider class action requirements at the motion to dismiss stage. *See, e.g.*,

*Luppino v. Mercedes-Benz USA, LLC*, No. 09-5582, 2013 WL 6047556, at *7 (D.N.J. Nov. 12, 2013). In any event, because the Court is dismissing the Complaint, the Court will not consider Defendants' arguments regarding class certification at this time.[3] Defendants' motion is therefore denied as moot.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**. The Complaint is dismissed without prejudice to allow Plaintiff an opportunity to file an amended complaint. Plaintiff has thirty (30) days to file an amended complaint, if he so chooses, consistent with this Opinion. In addition, Defendants' motion to strike the class action allegations and their request to stay discovery are **DENIED AS MOOT.** An appropriate Order accompanies this Opinion.

Dated: March 24, 2017

                                                                         *[signature]*
                                                                         John Michael Vazquez, U.S.D.J.

---

[3] Defendants also argue that discovery should be stayed pending a decision on this motion. Defs' Br. at 29-30. No discovery has been conducted in this case and because the Complaint will be dismissed, this issue is moot. The Court, therefore, will not address the parties' arguments regarding discovery.